UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                     **REPORT & RECOMMENDATION**
                                                                 19 CV 3528 (AMD)(LB)

  -against-

APPROXIMATELY $447,420.00 IN U.S.
CURRENCY, *Seized from Safe Deposit Box
#76100178, Held in the Name of Newton Croney*,

                Defendant.
---------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      On June 14, 2019, the United States of America commenced this civil forfeiture action *in rem*, pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 21 U.S.C. § 881(a)(6), alleging that approximately $447,420.00 of seized funds (the "Defendant Funds") were forfeited and condemned to the use and benefit of the United States of America. ECF No. 1. Despite proper service of the summons and the complaint, no claimant has asserted an interest in the Defendant Funds by filing a claim in this Court in accordance with Forfeiture Rule G(5)(a). Id. ¶¶ 7, 8. The Government now moves for entry of a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Ann M. Donnelly referred the Government's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, the Government's motion should be granted.

**BACKGROUND**

      The facts are derived from the uncontested allegations in the Government's complaint and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment). Around May 2, 2002, Newton I. Croney

("Croney") opened a Safe Deposit Box (the "Box") No. 76100178 at Sterling National Bank ("Sterling Bank"). ECF No. 1, Compl. at ¶ 7. The box was held at Sterling Bank's Branch located 1045 Flatbush Avenue, Brooklyn, New York. Id. Croney also maintained a savings account at the same Sterling Bank. Id. at ¶ 8.[1] Around September 19, 2018 and October 26, 2018[2], Sterling Bank sent Croney a letter, advising him that the Flatbush Branch was closing on December 19, 2018 and that he needed to remove the contents of the Box by November 3, 2018. Id. at 9. Croney was further informed that if the contents of the Box were not removed by November 3, 2018, Sterling Bank would drill open the Box, inventory the contents, and maintain the contents of the Box at their 1550 Flatbush Avenue, Brooklyn, New York location. Id. The contents of the Box were not removed, and on December 13, 2018, representatives of Sterling Bank drilled the Box open and located a black bag that contained the Defendant Funds as well as a loaded 9mm handgun. (the "firearm") Id. at ¶ 11.

Upon discovery of the firearm, Sterling Bank notified the New York City Police Department ("NYPD") of the firearm. The NYPD took possession of the firearm as it was illegal for Croney to possess a firearm. Id. at ¶ 12. The Defendant Funds were removed to and maintained at Sterling Bank's Williston Branch location, 162 Hillside Avenue, Williston Park, New York. Id. On December 28, 2018, Sterling Bank notified the Internal Revenue Service Criminal Investigation ("IRS-CI") of the Defendant Funds, and on January 4, 2019, IRS-CI law enforcement officers and the NYPD inspected the Defendant Funds. Id. at ¶ 13. The inspection was carried out by NYPD Canine Patty (or "K-9 Patty") and his handler, NYPD Detective Gladstone. Id. Patty is certified by the New York State Department of Criminal Justice in identifying "Crack/Cocaine,

---

[1] The approximate balance of the savings account in January 2019 was $13,500. Id.
[2] The October 26, 2018 letter was returned to Sterling Bank as undeliverable. Id. at ¶ 10.

2

Marijuana, Heroin, MDMA, Methamphetamine[,] and Suboxone." Id. Patty alerted positive for the presence of narcotics on the Defendant Funds. Id.

Croney's criminal history revealed arrests in the State of New York for narcotics and/or firearm charges, as well as pleas of guilty related to the criminal possession of narcotics, criminal sale of narcotics, and criminal possession of a weapon. Id. at ¶ 14.[3] The Government has been unable to identify any source of income for Croney. Id. at 15. The Government alleges that by Croney placing the Defendant Funds into the Box, rather than depositing the Defendant Funds into a bank account, Croney avoided the currency transactions reporting requirements, which require banks to report cash transactions that exceed $10,000. Id. at ¶ 16.

On January 30, 2019, Judge Scanlon of this Court issued a seizure warrant for the Defendant Funds. Id. at ¶ 17. On January 31, 2019, IRS-CI agents executed the warrant and seized the Defendant Funds, which are currently in the custody of the United States in the Department of Treasury's Asset Forfeiture Fund. Id.

## PROCEDURAL HISTORY

The United States commenced this civil forfeiture action *in rem* on June 14, 2019. ECF No. 1. The Government established notice by publication in this action. See ECF No. 4. The Government published notice of this action on www.forfeiture.gov, an official government site, for at least thirty consecutive from June 19, 2019 to July 18, 2019 in accordance with Forfeiture Rule G(4)(a)(iv)(C). Id.; Declaration of Assistant United States Attorney Brendan G. King ("King Decl.") ¶ 4. The Government likewise established notice to known potential claimants in this action. The Government served direct notice of forfeiture to potential claimant, Newton Croney,

---

[3] Specifically, Croney was charged with possession of narcotics and/or criminal sale of narcotics seven times between October 6, 1987 and February 22, 1996. Id. at ¶ 14. Croney was also charged with criminal possession of handgun on March 26, 1991, February 22, 1996, and April 14, 1999. Id.

3

on June 20, 2019 in accordance with Forfeiture Rule G(4)(b)(1). See ECF No. 5; King Decl. ¶ 5. The Government represents that it is not aware of any other known potential claimants to the Defendant Funds. King Decl. ¶ 7. No potential claimant has asserted an interest in the Defendant Funds in this action by filing a claim in this Court in accordance with Forfeiture Rule G(5)(a). The Government requested a certificate of default on August 28, 2018 (ECF No. 6), and on September 5, 2019, the Clerk of Court noted entry of default against the Defendant Funds. ECF No. 7. The Government filed the instant motion for a default judgment on September 6, 2019 pursuant to Rule 55(b)(2).

## DISCUSSION

### I. Standard of Review

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

4

Although on a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted" Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108, the Court still has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting Leider v. Ralfe, No. 01 CV 3137 (HB) (FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted).

## II. Legal Framework

*In rem* forfeiture actions, including civil forfeiture claims, "are governed by Rule G of the Forfeiture Rules and the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202." United States v. Vazquez–Alvarez, 760 F.3d 193, 197 (2d Cir. 2014) (footnote omitted); see also 18 U.S.C. § 981(b)(2); 21 U.S.C. § 881(b); Forfeiture R. G(1); United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600–00338, 617 F. Supp. 2d 103, 108 n. 1 (E.D.N.Y. 2007) (citing Forfeiture R. A(1)(B)). The Federal Rules of Civil Procedure also apply to *in rem* forfeiture actions to the extent that they do not conflict with the Forfeiture Rules. Forfeiture R. A(2); United States v. $138,381.00 in U.S. Currency, 240 F. Supp. 2d 220, 227 (E.D.N.Y. 2003).

Under 18 U.S.C. § 983(1), where the government executes a seizure pursuant to a civil forfeiture statute such as 21 U.S.C. § 881, it must provide notice to interested parties. Relevant

5

here, notice to interested parties may be satisfied by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Forfeiture R. G(4)(a)(iv)(C). Moreover, for any known potential claimants, the Government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government[.]" Forfeiture R. G(4)(b)(1).[4]

Once the government has commenced a forfeiture action, any person asserting an interest in a defendant *in rem* must file a claim in the court where the civil action is pending in compliance with Forfeiture Rule G(5)(a). Vazquez–Alvarez, 760 F.3d at 197. Within twenty-one days of filing the claim, the claimant must file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. 18 U.S.C. § 983(4); Forfeiture R. G(5)(b).

Pursuant to CAFRA, Pub.L. No. 106–185, 114 Stat. 202; 18 U.S.C. § 983, the burden of proof is on the government to prove its right to forfeiture of an asset by a preponderance of the evidence. See 18 U.S.C. § 983(c)(1) ("the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture"). Moreover, 18 U.S.C. § 983(c)(3) provides that "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." Therefore, the government must show a substantial connection between the seized property and offense that underlies the Government's theory of forfeiture.

---

[4] As discussed *supra*, the Government has established direct notice to Newton Croney and notice to known potential claimants pursuant to Forfeiture Rules G(4)(a)(iv)(C) and G(4)(b)(1).

**III. The Government's Right to Forfeiture**

    a. Forfeiture Pursuant to 21 U.S.C. § 881(a)(6)

The Government posits that the Defendant Funds "constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance" and thus are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). If the Government seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6) on a theory that property constitutes proceeds traceable to an exchange for narcotics, "it must demonstrate that those proceeds have a substantial connection to drug trafficking." United States v. $22,173.00 in U.S. Currency, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010); see also United States v. Real Prop. & Premises Known as 90-23 201st St., Hollis, New York, 775 F. Supp. 2d 545, 564 (E.D.N.Y. 2011). The Government "need not prove that there is a substantial connection between the property and any specific drug transaction;" however, the Government must "prove more generally, based on totality of the circumstances, that the property is substantially connected to narcotics trafficking." United States v. U.S. Currency in the Sum $185,000, 455 F. Supp. 2d 145, 149 (E.D.N.Y. 2006) (citations omitted).

The Government has pled sufficient facts to establish a substantial connection between the Defendant Funds and drug trafficking. The Defendant Funds, $447,420.00 in U.S. currency, is a large sum of money to be deposited in a safe deposit box. See Compl. ¶¶ 16–18; United States v. $32,507.00 in U.S. Currency, No. 14 Civ. 5118, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) (the presence of large sums of cash is "not *per se* evidence of drug-related activity, [but] it is suggestive of involvement in illegal activity more generally."). Moreover, the Government's additional allegations establish a substantial connection between the Defendant Funds and drug trafficking: that a certified NYPD K-9 alerted positive to the presence of narcotics on the

7

Defendant Funds; that a loaded 9mm handgun was found in the same safe deposit box; that the person who maintained the Box, Nelson Croney, had a number of criminal convictions involving narcotics; and that the Government was unable to locate a legitimate source of income for Croney. These facts are sufficient to connect the Defendant Funds and drug trafficking. See United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000), No. 16 CV 6564, 2018 WL 948752, at *6 (E.D.N.Y. Feb. 16, 2018) (finding the presence of narcotics on money suggests a substantial connection between the Defendant Funds and the drug trade); United States v. U.S. Currency in Amount of Two Hundred Forty Eight Thousand Four Hundred Thirty Dollars, No. 01 CV 5036, 2004 WL 958010 at *5 (E.D.N.Y. Apr. 14, 2004) ("The government may rely upon a claimant's narcotics conviction, as one factor, to meet its burden of establishing the requisite connection between funds and drug activity"); see also $32,507.00 in U.S. Currency, 2014 WL 4626005, at *3 (finding the inability to explain the origins of large sums of money gives rise to an inference of illegal activity).

    For these reasons, the Government's complaint is sufficient to establish a substantial connection between the Defendant Funds and drug activity. No interested party has filed a claim to dispute the Government's allegations, which must be taken as true for the purposes of deciding this motion. Accordingly, the Court should grant the Government's Motion for a Default Judgment and find that the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).[5]

---

[5] Because the Government has established that the Defendant Funds are subject to Forfeiture pursuant to 21 U.S.C. § 881(a)(6), the Court need not address whether the Defendant Funds are subject to Forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981 (a)(1)(C).

## CONCLUSION

Accordingly, it is recommended that the Court should grant the Government's Motion for a Default Judgment (ECF No. 8) and issue the proposed Default Judgment and Order of Forfeiture (ECF No. 8-2) against the Defendant Funds Approximately $447,420.00 in U.S. Currency. The Government is hereby ordered to serve a copy of this Report on Newton Croney at his last known address and file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: February 3, 2020
       Brooklyn, New York